(Slip Opinion) OCTOBER TERM, 2013 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* CASTLEMAN

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 12–1371.   Argued January 15, 2014—Decided March 26, 2014

Respondent Castleman moved to dismiss his indictment under 18 U. S. C. §922(g)(9), which forbids the possession of firearms by anyone convicted of a "misdemeanor crime of domestic violence." He argued that his previous conviction for "intentionally or knowingly caus[ing] bodily injury to" the mother of his child, App. 27, did not qualify as a "misdemeanor crime of domestic violence" because it did not involve "the use or attempted use of physical force," 18 U. S. C. §921(a)(33)(A)(ii). The District Court agreed, reasoning that "physical force" must entail violent contact and that one can cause bodily injury without violent contact, *e.g.*, by poisoning. The Sixth Circuit affirmed on a different rationale. It held that the degree of physical force required for a conviction to constitute a "misdemeanor crime of domestic violence" is the same as that required for a "violent felony" under the Armed Career Criminal Act (ACCA), §924(e)(2)(B)(i)—namely, violent force—and that Castleman could have been convicted for causing slight injury by nonviolent conduct.

*Held*: Castleman's conviction qualifies as a "misdemeanor crime of domestic violence." Pp. 4–16.

   (a) Section 922(g)(9)'s "physical force" requirement is satisfied by the degree of force that supports a common-law battery conviction—namely, offensive touching. Congress presumably intends to incorporate the common-law meaning of terms that it uses, and nothing suggests Congress intended otherwise here. The Sixth Circuit relied upon *Johnson* v. *United States*, 559 U. S. 133, in which the common-law meaning of "force" was found to be a "comical misfit," *id.*, at 145, when read into ACCA's "violent felony" definition. But *Johnson* resolves this case in the Government's favor: The very reasons for rejecting the common-law meaning in *Johnson* are reasons to embrace

it here.  First, whereas it was "unlikely" that Congress meant to in-
corporate in ACCA's "violent felony" definition "a phrase that the
common law gave peculiar meaning only in its definition of a misde-
meanor," *id.*, at 141, it is likely that Congress meant to incorporate
the misdemeanor-specific meaning of "force" in defining a "misde-
meanor crime of domestic violence."  Second, whereas the word "vio-
lent" or "violence" standing alone "connotes a substantial degree of
force," *id.,* at 140, that is not true of "domestic violence," which is a
term of art encompassing acts that one might not characterize as "vi-
olent" in a nondomestic context.  Third, whereas this Court has hesi-
tated to apply ACCA to "crimes which, though dangerous, are not
typically committed by those whom one normally labels 'armed career
criminals,'" *Begay* v. *United States*, 553 U. S. 137, 146, there is no
anomaly in grouping domestic abusers convicted of generic assault or
battery offenses together with others whom §922(g) disqualifies from
gun ownership.  In addition, a contrary reading would have made
§922(g)(9) inoperative in at least ten States when it was enacted.
Pp. 4–10.

   (b) Under this definition of "physical force," Castleman's conviction
qualifies as a "misdemeanor crime of domestic violence."  The appli-
cation of the modified categorical approach—consulting Castleman's
state indictment to determine whether his conviction entailed the el-
ements necessary to constitute the generic federal offense—is
straightforward.  Castleman pleaded guilty to "intentionally or know-
ingly caus[ing] bodily injury to" the mother of his child, and the
knowing or intentional causation of bodily injury necessarily involves
the use of physical force.  First, a "bodily injury" must result from
"physical force."  The common-law concept of "force" encompasses
even its indirect application, making it impossible to cause bodily in-
jury without applying force in the common-law sense.  Second, the
knowing or intentional application of force is a "use" of force.  *Leocal*
v. *Ashcroft*, 543 U. S. 1, distinguished.  Pp. 10–13.

   (c) Castleman claims that legislative history, the rule of lenity, and
the canon of constitutional avoidance weigh against this Court's in-
terpretation of §922(g)(9), but his arguments are unpersuasive.
Pp. 14–15.

695 F. 3d 582, reversed and remanded.

   SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS,
C. J., and KENNEDY, GINSBURG, BREYER, and KAGAN, JJ., joined.  SCAL-
IA, J., filed an opinion concurring in part and concurring in the judg-
ment.  ALITO, J., filed an opinion concurring in the judgment, in which
THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

———————

No. 12–1371

———————

## UNITED STATES, PETITIONER *v.* JAMES ALVIN CASTLEMAN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 26, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Recognizing that "[f]irearms and domestic strife are a potentially deadly combination," *United States* v. *Hayes*, 555 U. S. 415, 427 (2009), Congress forbade the possession of firearms by anyone convicted of "a misdemeanor crime of domestic violence." 18 U. S. C. §922(g)(9). The respondent, James Alvin Castleman, pleaded guilty to the misdemeanor offense of having "intentionally or knowingly cause[d] bodily injury to" the mother of his child. App. 27. The question before us is whether this conviction qualifies as "a misdemeanor crime of domestic violence." We hold that it does.

I

A

This country witnesses more than a million acts of domestic violence, and hundreds of deaths from domestic violence, each year.[1] See *Georgia* v. *Randolph*, 547 U. S.

_____

[1] See Dept. of Justice (DOJ), Bureau of Justice Statistics (BJS), J. Truman, L. Langton, & M. Planty, Criminal Victimization 2012 (Oct. 2013) (Table 1) (1,259,390 incidents of domestic violence in 2012),

103, 117–118 (2006). Domestic violence often escalates in severity over time, see Brief for Major Cities Chiefs Association et al. as *Amici Curiae* 13–15; Brief for National Network to End Domestic Violence et al. as *Amici Curiae* 9–12, and the presence of a firearm increases the likelihood that it will escalate to homicide, see *id.,* at 14–15; Campbell et al., Assessing Risk Factors for Intimate Partner Homicide, DOJ, Nat. Institute of Justice J., No. 250, p. 16 (Nov. 2003) ("When a gun was in the house, an abused woman was 6 times more likely than other abused women to be killed"). "[A]ll too often," as one Senator noted during the debate over §922(g)(9), "the only difference between a battered woman and a dead woman is the presence of a gun." 142 Cong. Rec. 22986 (1996) (statement of Sen. Wellstone).

Congress enacted §922(g)(9), in light of these sobering facts, to "'close [a] dangerous loophole'" in the gun control laws: While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors. *Hayes*, 555 U. S., at 418, 426. Section 922(g)(9) provides, as relevant, that any person "who has been convicted . . . of a misdemeanor crime of domestic violence" may not "possess in or affecting commerc[e] any firearm or ammunition." With exceptions that do not apply here, the statute defines a "misdemeanor crime of domestic violence" as

"an offense that . . . (i) is a misdemeanor under Federal, State, or Tribal law; and (ii) has, as an element, the use or attempted use of physical force, or the

_____

online at http://www.bjs.gov/content/pub/pdf/cv12.pdf (all Internet materials as visited Mar. 19, 2014, and available in Clerk of Court's case file); DOJ, BJS, C. Rennison, Crime Data Brief, Intimate Partner Violence, 1993–2001, p. 1 (Feb. 2003) (violence among intimate partners caused deaths of 1,247 women and 440 men in 2000), online at http://www.bjs.gov/content/pub/pdf/ipv01.pdf.

threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." §921(a)(33)(A).

This case concerns the meaning of one phrase in this definition: "the use . . . of physical force."

## B

In 2001, Castleman was charged in a Tennessee court with having "intentionally or knowingly cause[d] bodily injury to" the mother of his child, in violation of Tenn. Code Ann. §39–13–111(b) (Supp. 2002). App. 27. He pleaded guilty. *Id.,* at 29.

In 2008, federal authorities learned that Castleman was selling firearms on the black market. A grand jury in the Western District of Tennessee indicted him on two counts of violating §922(g)(9) and on other charges not relevant here. *Id.,* at 13–16.

Castleman moved to dismiss the §922(g)(9) charges, arguing that his Tennessee conviction did not qualify as a "misdemeanor crime of domestic violence" because it did not "ha[ve], as an element, the use . . . of physical force," §921(a)(33)(A)(ii). The District Court agreed, on the theory that "the 'use of physical force' for §922(g)(9) purposes" must entail "violent contact with the victim." App. to Pet. for Cert. 40a. The court held that a conviction under the relevant Tennessee statute cannot qualify as a "misdemeanor crime of domestic violence" because one can cause bodily injury without "violent contact"—for example, by "deceiving [the victim] into drinking a poisoned beverage." *Id.,* at 41a.

A divided panel of the U. S. Court of Appeals for the

Sixth Circuit affirmed, by different reasoning. 695 F. 3d 582 (2012). The majority held that the degree of physical force required by §921(a)(33)(A)(ii) is the same as required by §924(e)(2)(B)(i), which defines "violent felony." *Id.,* at 587. Applying our decision in *Johnson* v. *United States,* 559 U. S. 133 (2010), which held that §924(e)(2)(B)(i) requires "*violent* force," *id.,* at 140, the majority held that Castleman's conviction did not qualify as a "misdemeanor crime of domestic violence" because Castleman could have been convicted for "caus[ing] a slight, nonserious physical injury with conduct that cannot be described as violent." 695 F. 3d, at 590. Judge McKeague dissented, arguing both that the majority erred in extending *Johnson*'s definition of a "violent felony" to the context of a "misdemeanor crime of domestic violence" and that, in any event, Castleman's conviction satisfied the *Johnson* standard. *Id.,* at 593–597.

The Sixth Circuit's decision deepened a split of authority among the Courts of Appeals. Compare, *e.g., United States* v. *Nason,* 269 F. 3d 10, 18 (CA1 2001) (§922(g)(9) "encompass[es] crimes characterized by the application of *any* physical force"), with *United States* v. *Belless,* 338 F. 3d 1063, 1068 (CA9 2003) (§922(g)(9) covers only "the violent use of force"). We granted certiorari to resolve this split, 570 U. S. ___ (2013), and now reverse the Sixth Circuit's judgment.

## II

### A

"It is a settled principle of interpretation that, absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" *Sekhar* v. *United States,* 570 U. S. ___, ___ (2013) (slip op., at 3). Seeing no "other indication" here, we hold that Congress incorporated the common-law meaning of "force"—namely, offensive touching—in §921(a)(33)(A)'s definition of a "mis-

demeanor crime of domestic violence."

*Johnson* resolves this case in the Government's favor—not, as the Sixth Circuit held, in Castleman's. In *Johnson*, we considered whether a battery conviction was a "violent felony" under the Armed Career Criminal Act (ACCA), §924(e)(1). As here, ACCA defines such a crime as one that "has as an element the use . . . of physical force," §924(e)(2)(B)(i). We began by observing that at common law, the element of force in the crime of battery was "satisfied by even the slightest offensive touching." 559 U. S., at 139 (citing 3 W. Blackstone, Commentaries on the Laws of England 120 (1768)).[2] And we recognized the general rule that "a common-law term of art should be given its established common-law meaning," except "where that meaning does not fit." 559 U. S., at 139. We declined to read the common-law meaning of "force" into ACCA's definition of a "violent felony," because we found it a "comical misfit with the defined term." *Id.,* at 145; see *United States* v. *Stevens*, 559 U. S. 460, 474 (2010) ("[A]n unclear definitional phrase may take meaning from the term to be defined"). In defining a "'*violent* felony,'" we held, "the phrase 'physical force'" must "mea[n] *violent* force." *Johnson*, 559 U. S., at 140. But here, the common-law meaning of "force" fits perfectly: The very reasons we gave for rejecting that meaning in defining a "violent felony" are reasons to embrace it in defining a "misdemeanor crime of domestic violence."[3]

—————

[2] We explained that the word "physical" did not add much to the word "force," except to distinguish "force exerted by and through concrete bodies . . . from, for example, intellectual force or emotional force." *Johnson*, 559 U. S., at 138.

[3] *Johnson* specifically reserved the question whether our definition of "physical force" would extend to 18 U. S. C. §922(g)(9). 559 U. S., at 143–144. And these reasons for declining to extend *Johnson*'s definition to §922(g)(9) serve equally to rebut the "presumption of consistent usage" on which JUSTICE SCALIA's concurrence heavily relies, *post,* at 1–2, 4.

First, because perpetrators of domestic violence are "routinely prosecuted under generally applicable assault or battery laws," *Hayes*, 555 U. S., at 427, it makes sense for Congress to have classified as a "misdemeanor crime of domestic violence" the type of conduct that supports a common-law battery conviction. Whereas it was "unlikely" that Congress meant to incorporate in the definition of a "'violent felony' a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor," *Johnson*, 559 U. S., at 141, it is likely that Congress meant to incorporate that misdemeanor-specific meaning of "force" in defining a "misdemeanor crime of domestic violence."

Second, whereas the word "violent" or "violence" standing alone "connotes a substantial degree of force," *id.,* at 140,[4] that is not true of "domestic violence." "Domestic

---

[4] This portion of *Johnson*'s analysis relied heavily on *Leocal* v. *Ashcroft*, 543 U. S. 1 (2004), in which we interpreted the meaning of a "crime of violence" under 18 U. S. C. §16. As in *Johnson* and here, the statute defines a "crime of violence" in part as one "that has as an element the use . . . of physical force," §16(a). In support of our holding in *Johnson*, we quoted *Leocal*'s observation that "'[t]he ordinary meaning of [a "crime of violence"] . . . suggests a category of violent, active crimes.'" 559 U. S., at 140 (quoting 543 U. S., at 11).

The Courts of Appeals have generally held that mere offensive touching cannot constitute the "physical force" necessary to a "crime of violence," just as we held in *Johnson* that it could not constitute the "physical force" necessary to a "violent felony." See *Karimi* v. *Holder*, 715 F. 3d 561, 566–568 (CA4 2013); *Singh* v. *Ashcroft*, 386 F. 3d 1228, 1233 (CA9 2004); *Flores* v. *Ashcroft*, 350 F. 3d 666, 672 (CA7 2003); *United States* v. *Venegas-Ornelas*, 348 F. 3d 1273, 1275 (CA10 2003); *United States* v. *Landeros-Gonzales*, 262 F. 3d 424, 426 (CA5 2001); see also *United States* v. *Rede-Mendez*, 680 F. 3d 552, 558 (CA6 2012) (commenting generally that "[i]n the crime of violence context, 'the phrase "physical force" means *violent* force'"); *United States* v. *Haileselassie*, 668 F. 3d 1033, 1035 (CA8 2012) (dicta). But see *Hernandez* v. *U. S. Attorney General*, 513 F. 3d 1336, 1340, n. 3 (CA11 2008) (*per curiam*). The Board of Immigration Appeals has similarly extended *Johnson*'s requirement of violent force to the context of a "crime of

violence" is not merely a type of "violence"; it is a term of art encompassing acts that one might not characterize as "violent" in a nondomestic context. See Brief for National Network to End Domestic Violence et al. as *Amici Curiae* 4–9; DOJ, Office on Violence Against Women, Domestic Violence (defining physical forms of domestic violence to include "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling"), online at http://www.ovw. usdoj.gov/domviolence.htm.[5]　Indeed, "most physical assaults committed against women and men by intimates are relatively minor and consist of pushing, grabbing, shoving, slapping, and hitting." DOJ, P. Tjaden & N. Thoennes, Extent, Nature and Consequences of Intimate Partner Violence 11 (2000).

　Minor uses of force may not constitute "violence" in the generic sense. For example, in an opinion that we cited

_____

violence" under §16. *Matter of Velasquez*, 25 I. & N. Dec. 278, 282 (2010). Nothing in today's opinion casts doubt on these holdings, because—as we explain—"domestic violence" encompasses a range of force broader than that which constitutes "violence" *simpliciter*.

　We note, as does JUSTICE SCALIA's concurrence, *post,* at 8, and n. 7, that federal law elsewhere defines "domestic violence" in more limited terms: For example, a provision of the Immigration and Nationality Act defines a "'crime of domestic violence'" as "any crime of violence (as defined by [18 U. S. C. §16])" committed against a qualifying relation. 8 U. S. C. §1227(a)(2)(E)(i). Our view that "domestic violence" encompasses acts that might not constitute "violence" in a nondomestic context does not extend to a provision like this, which specifically defines "domestic violence" by reference to a generic "crime of violence."

　[5] See also A. Ganley, Understanding Domestic Violence, in Improving the Health Care Response to Domestic Violence: A Resource Manual for Health Care Providers 18 (2d ed. 1996), online at http://www.futureswithoutviolence.org/userfiles/file/HealthCare/ improving_healthcare_manual_1.pdf (physical forms of domestic violence "may include spitting, scratching, biting, grabbing, shaking, shoving, pushing, restraining, throwing, twisting, [or] slapping"); M. McCue, Domestic Violence: A Reference Handbook 6 (1995) (noting that physical forms of domestic violence "may begin with relatively minor assaults such as painful pinching or squeezing").

with approval in *Johnson*, the Seventh Circuit noted that
it was "hard to describe . . . as 'violence'" "a squeeze of the
arm [that] causes a bruise." *Flores* v. *Ashcroft*, 350 F. 3d
666, 670 (2003).  But an act of this nature is easy to de-
scribe as "domestic violence," when the accumulation of
such acts over time can subject one intimate partner to the
other's control.  If a seemingly minor act like this draws
the attention of authorities and leads to a successful pros-
ecution for a misdemeanor offense, it does not offend
common sense or the English language to characterize the
resulting conviction as a "misdemeanor crime of domestic
violence."

JUSTICE SCALIA's concurrence discounts our reference to
social-science definitions of "domestic violence," including
those used by the organizations most directly engaged
with the problem and thus most aware of its dimensions.
See *post,* at 8–11.  It is important to keep in mind, how-
ever, that the operative phrase we are construing is not
"domestic violence"; it is "physical force."  §921(a)(33)(A).
"Physical force" has a presumptive common-law meaning,
and the question is simply whether that presumptive
meaning makes sense in defining a "misdemeanor crime of
domestic violence."[6]

A third reason for distinguishing *Johnson*'s definition of
"physical force" is that unlike in *Johnson*—where a deter-
mination that the defendant's crime was a "violent felony"
would have classified him as an "armed career criminal"—

_____

[6] The concurrence's reliance on definitions of "domestic violence" in
other statutory provisions, see *post,* at 8, and n. 7, is similarly unper-
suasive.  These other provisions show that when Congress wished to
define "domestic violence" as a type of "violence" *simpliciter*, it knew
how to do so.  That it did not do so here suggests, if anything, that it did
not mean to.  See, *e.g., Custis* v. *United States*, 511 U. S. 485, 492
(1994).  This also answers the concurrence's suggestion, *post,* at 10,
that our holding will somehow make it difficult for Congress to define
"domestic violence"—where it wants to—as requiring violent force.

the statute here groups those convicted of "misdemeanor crimes of domestic violence" with others whose conduct does not warrant such a designation. Section 922(g) bars gun possession by anyone "addicted to any controlled substance," §922(g)(3); by most people who have "been admitted to the United States under a nonimmigrant visa," §922(g)(5)(B); by anyone who has renounced United States citizenship, §922(g)(7); and by anyone subject to a domestic restraining order, §922(g)(8). Whereas we have hesitated (as in *Johnson*) to apply the Armed Career Criminal Act to "crimes which, though dangerous, are not typically committed by those whom one normally labels 'armed career criminals,'" *Begay* v. *United States*, 553 U. S. 137, 146 (2008), we see no anomaly in grouping domestic abusers convicted of generic assault or battery offenses together with the others whom §922(g) disqualifies from gun ownership.

An additional reason to read the statute as we do is that a contrary reading would have rendered §922(g)(9) inoperative in many States at the time of its enactment. The "assault or battery laws" under which "domestic abusers were . . . routinely prosecuted" when Congress enacted §922(g)(9), and under which many are still prosecuted today, *Hayes*, 555 U. S., at 427, fall generally into two categories: those that prohibit both offensive touching and the causation of bodily injury, and those that prohibit only the latter. See Brief for United States 36–38. Whether or not the causation of bodily injury necessarily entails violent force—a question we do not reach—mere offensive touching does not. See *Johnson*, 559 U. S., at 139–140. So if offensive touching did not constitute "force" under §921(a)(33)(A), then §922(g)(9) would have been ineffectual in at least 10 States—home to nearly thirty percent of the Nation's population[7]—at the time of its enactment.

_____

[7] See U. S. Census Bureau, Time Series of Intercensal State Popula-

See *post*, at 6, and n. 5 (SCALIA, J., concurring in part and concurring in judgment) (acknowledging that §922(g)(9) would have been inapplicable in California and nine other States if it did not encompass offensive touching); App. to Brief for United States 10a–16a (listing statutes prohibiting both offensive touching and the causation of bodily injury, only some of which are divisible); cf. *Hayes*, 555 U. S., at 427 (rejecting an interpretation under which "§922(g)(9) would have been 'a dead letter' in some two-thirds of the States from the very moment of its enactment").

In sum, *Johnson* requires that we attribute the common-law meaning of "force" to §921(a)(33)(A)'s definition of a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force." We therefore hold that the requirement of "physical force" is satisfied, for purposes of §922(g)(9), by the degree of force that supports a common-law battery conviction.

B

Applying this definition of "physical force," we conclude that Castleman's conviction qualifies as a "misdemeanor crime of domestic violence." In doing so, we follow the analytic approach of *Taylor* v. *United States*, 495 U. S. 575 (1990), and *Shepard* v. *United States*, 544 U. S. 13 (2005). We begin with *Taylor*'s categorical approach, under which we look to the statute of Castleman's conviction to determine whether that conviction necessarily "ha[d], as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon," §921(a)(33)(A).

The Tennessee statute under which Castleman was convicted made it a crime to "commi[t] an assault . . .

––––––––––

tion Estimates: April 1, 1990 to April 1, 2000, online at http://www.census.gov/popest/data/intercensal/st-co/files/CO-EST2001-12-00.pdf (estimating state and national populations as of July 1, 1996).

against" a "family or household member"—in Castleman's case, the mother of his child. Tenn. Code Ann. §39–13–111(b). A provision incorporated by reference, §39–13–101, defined three types of assault: "(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) [i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly caus[ing] physical contact with another" in a manner that a "reasonable person would regard . . . as extremely offensive or provocative." §39–13–101(a).

It does not appear that every type of assault defined by §39–13–101 necessarily involves "the use or attempted use of physical force, or the threatened use of a deadly weapon," §921(a)(33)(A). A threat under §39–13–101(2) may not necessarily involve a deadly weapon, and the merely reckless causation of bodily injury under §39–13–101(1) may not be a "use" of force.[8]

But we need not decide whether a domestic assault conviction in Tennessee categorically constitutes a "misdemeanor crime of domestic violence," because the parties

––––––––––

[8]We held in *Leocal* that "'use' requires active employment," rather "than negligent or merely accidental conduct." 543 U. S*.,* at 9. Although *Leocal* reserved the question whether a reckless application of force could constitute a "use" of force, *id.,* at 13, the Courts of Appeals have almost uniformly held that recklessness is not sufficient. See *United States* v. *Palomino Garcia*, 606 F. 3d 1317, 1335–1336 (CA11 2010); *Jimenez-Gonzalez* v. *Mukasey*, 548 F. 3d 557, 560 (CA7 2008); *United States* v. *Zuniga-Soto*, 527 F. 3d 1110, 1124 (CA10 2008); *United States* v. *Torres-Villalobos*, 487 F. 3d 607, 615–616 (CA8 2007); *United States* v. *Portela*, 469 F. 3d 496, 499 (CA6 2006); *Fernandez-Ruiz* v. *Gonzales*, 466 F. 3d 1121, 1127–1132 (CA9 2006) (en banc); *Garcia* v. *Gonzales*, 455 F. 3d 465, 468–469 (CA4 2006); *Oyebanji* v. *Gonzales*, 418 F. 3d 260, 263–265 (CA3 2005) (Alito, J.); *Jobson* v. *Ashcroft*, 326 F. 3d 367, 373 (CA2 2003); *United States* v. *Chapa-Garza*, 243 F. 3d 921, 926 (CA5 2001). But see *United States* v. *Booker*, 644 F. 3d 12, 19–20 (CA1 2011) (noting that the First Circuit had not resolved the recklessness issue under *Leocal*, but declining to extend *Leocal*'s analysis to §922(g)(9)).

do not contest that §39–13–101 is a "'divisible statute,'" *Descamps* v. *United States*, 570 U. S. ___, ___ (2013) (slip op., at 1). We may accordingly apply the modified categorical approach, consulting the indictment to which Castleman pleaded guilty in order to determine whether his conviction did entail the elements necessary to constitute the generic federal offense. *Id.,* at ___ (slip op., at 1–2); see *Shepard*, 544 U. S., at 26. Here, that analysis is straightforward: Castleman pleaded guilty to having "intentionally or knowingly cause[d] bodily injury" to the mother of his child, App. 27, and the knowing or intentional causation of bodily injury necessarily involves the use of physical force.

First, a "bodily injury" must result from "physical force." Under Tennessee law, "bodily injury" is a broad term: It "includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. §39–11–106(a)(2) (1997). JUSTICE SCALIA's concurrence suggests that these forms of injury necessitate violent force, under *Johnson*'s definition of that phrase. *Post,* at 3. But whether or not that is so—a question we do not decide—these forms of injury do necessitate force in the common-law sense.

The District Court thought otherwise, reasoning that one can cause bodily injury "without the 'use of physical force'"—for example, by "deceiving [the victim] into drinking a poisoned beverage, without making contact of any kind." App. to Pet. for Cert. 41a. But as we explained in *Johnson*, "physical force" is simply "force exerted by and through concrete bodies," as opposed to "intellectual force or emotional force." 559 U. S., at 138. And the common-law concept of "force" encompasses even its indirect application. "Force" in this sense "describ[es] one of the elements of the common-law crime of battery," *id.,* at 139, and "[t]he force used" in battery "need not be applied directly to the body of the victim." 2 W. LaFave, Substan-

tive Criminal Law §16.2(b) (2d ed. 2003). "[A] battery may be committed by administering a poison or by infecting with a disease, or even by resort to some intangible substance," such as a laser beam. *Ibid.* (footnote omitted) (citing *State* v. *Monroe*, 121 N. C. 677, 28 S. E. 547 (1897) (poison); *State* v. *Lankford*, 29 Del. 594, 102 A. 63 (1917) (disease); *Adams* v. *Commonwealth*, 33 Va. App. 463, 534 S. E. 2d 347 (2000) (laser beam)). It is impossible to cause bodily injury without applying force in the common-law sense.

Second, the knowing or intentional application of force is a "use" of force. Castleman is correct that under *Leocal* v. *Ashcroft*, 543 U. S. 1 (2004), the word "use" "conveys the idea that the thing used (here, 'physical force') has been made the user's instrument." Brief for Respondent 37. But he errs in arguing that although "[p]oison may have 'forceful physical properties' as a matter of organic chemistry, . . . no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink," *ibid.* The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim. *Leocal* held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct," 543 U. S., at 9; it did not hold that the word "use" somehow alters the meaning of "force."

Because Castleman's indictment makes clear that the use of physical force was an element of his conviction, that conviction qualifies as a "misdemeanor crime of domestic violence."

### III

We are not persuaded by Castleman's nontextual arguments against our interpretation of §922(g)(9).

### A

First, Castleman invokes §922(g)(9)'s legislative history to suggest that Congress could not have intended for the provision to apply to acts involving minimal force. But to the extent that legislative history can aid in the interpretation of this statute, Castleman's reliance on it is unpersuasive.

Castleman begins by observing that during the debate over §922(g)(9), several Senators argued that the provision would help to prevent gun violence by perpetrators of severe domestic abuse. Senator Lautenberg referred to "serious spousal or child abuse" and to "violent individuals"; Senator Hutchison to "'people who batter their wives'"; Senator Wellstone to people who "brutalize" their wives or children; and Senator Feinstein to "severe and recurring domestic violence." 142 Cong. Rec. 22985–22986, 22988. But as we noted above, see *supra,* at 2, the impetus of §922(g)(9) was that even perpetrators of severe domestic violence are often convicted "under generally applicable assault or battery laws." *Hayes*, 555 U. S., at 427. So nothing about these Senators' isolated references to severe domestic violence suggests that they would not have wanted §922(g)(9) to apply to a misdemeanor assault conviction like Castleman's.

Castleman next observes that §922(g)(9) is the product of a legislative compromise. The provision originally barred gun possession for any "crime of domestic violence," defined as any "felony or misdemeanor crime of violence, regardless of length, term, or manner of punishment." 142 Cong. Rec. 5840. Congress rewrote the provision to require the use of physical force in response to the concern "that the term crime of violence was too broad, and could

be interpreted to include an act such as cutting up a credit card with a pair of scissors," *id.,* at 26675. See *Hayes*, 555 U. S., at 428. Castleman would have us conclude that Congress thus meant "to narrow the scope of the statute to convictions based on especially severe conduct." Brief for Respondent 24. But all Congress meant to do was address the fear that §922(g)(9) might be triggered by offenses in which no force at all was directed at a person. As Senator Lautenberg noted, the revised text was not only "more precise" than the original but also "probably broader." 142 Cong. Rec. 26675.

### B

We are similarly unmoved by Castleman's invocation of the rule of lenity. Castleman is correct that our "construction of a criminal statute must be guided by the need for fair warning." *Crandon* v. *United States*, 494 U. S. 152, 160 (1990). But "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber* v. *Thomas*, 560 U. S. 474, 488 (2010) (citation and internal quotation marks omitted). That is not the case here.

### C

Finally, Castleman suggests—in a single paragraph— that we should read §922(g)(9) narrowly because it implicates his constitutional right to keep and bear arms. But Castleman has not challenged the constitutionality of §922(g)(9), either on its face or as applied to him, and the meaning of the statute is sufficiently clear that we need not indulge Castleman's cursory nod to constitutional avoidance concerns.

\* \* \*

Castleman's conviction for having "intentionally or

knowingly cause[d] bodily injury to" the mother of his child qualifies as a "misdemeanor crime of domestic violence." The judgment of the United States Court of Appeals for the Sixth Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 12–1371

UNITED STATES, PETITIONER *v.* JAMES ALVIN CASTLEMAN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 26, 2014]

JUSTICE SCALIA, concurring in part and concurring in the judgment.

I agree with the Court that intentionally or knowingly causing bodily injury to a family member "has, as an element, the use . . . of physical force," 18 U. S. C. § §921(a)(33)(A)(ii), and thus constitutes a "misdemeanor crime of domestic violence," §922(g)(9). I write separately, however, because I reach that conclusion on narrower grounds.

## I

Our decision in *Johnson* v. *United States*, 559 U. S. 133 (2010), is the natural place to begin. *Johnson* is significant here because it concluded that "the phrase 'physical force' means *violent* force—that is, *force capable of causing physical pain or injury to another person.*" *Id.,* at 140 (second emphasis added). This is an easy case if the phrase "physical force" has the same meaning in §921(a)(33)(A)(ii), the provision that defines "misdemeanor crime of domestic violence" for purposes of §922(g)(9), as it does in §924(e)(2)(B)(ii), the provision interpreted in *Johnson*, since it is impossible to cause bodily injury without using force "capable of" producing that result.

There are good reasons to give the phrase *Johnson*'s interpretation. One is the presumption of consistent

usage—the rule of thumb that a term generally means the same thing each time it is used.  Although the presumption is most commonly applied to terms appearing in the same enactment, *e.g., IBP, Inc.* v. *Alvarez*, 546 U. S. 21, 33–34 (2005), it is equally relevant "when Congress uses the same language in two statutes having similar purposes," *Smith* v. *City of Jackson*, 544 U. S. 228, 233 (2005) (plurality opinion); see also *Northcross* v. *Board of Ed. of Memphis City Schools*, 412 U. S. 427, 428 (1973) (*per curiam*).  This case is a textbook candidate for application of the *Smith-Northcross* branch of the rule.  The "physical force" clauses at issue here and in *Johnson* are worded in nearly identical fashion: The former defines a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force," §921(a)(33)(A)(ii), while the latter defines a "violent felony" as an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," §924(e)(2)(B)(i).  And both statutes are designed to promote public safety by deterring a class of criminals from possessing firearms.

Respondent's arguments fail to overcome the presumption of consistent usage.  In respondent's view, "physical force" cannot mean "*any* force that produces *any* pain or bodily injury," Brief for Respondent 25, because §921(a)(33)(A)(ii) defines a *violent* crime and one can inflict all sorts of minor injuries—bruises, paper cuts, etc.—by engaging in *nonviolent* behavior.  Respondent therefore reasons that §921(a)(33)(A)(ii) requires force capable of inflicting "serious" bodily injury.  That requirement is more demanding than both of the plausible meanings of "physical force" we identified in *Johnson*: common-law offensive touching (which *Johnson* rejected) and force capable of causing physical pain or injury, serious or otherwise.  See 559 U. S., at 138–140.  It would be surpassing strange to read a statute defining a "*misdemeanor*

crime of domestic violence" as requiring greater force than the similarly worded statute in *Johnson*, which defined a "violent *felony*," and respondent does not make a convincing case for taking that extraordinary step.

For these reasons, I would give "physical force" the same meaning in §921(a)(33)(A)(ii) as in *Johnson*. The rest of the analysis is straightforward. Because "intentionally or knowingly caus[ing] bodily injury," App. 27, categorically involves the use of "force capable of causing physical pain or injury to another person," 559 U. S., at 140, respondent's 2001 domestic-assault conviction qualifies as a "misdemeanor crime of domestic violence" under §922(g)(9).[1] I would reverse the judgment below on that basis and remand for further proceedings.

## II

Unfortunately, the Court bypasses that narrower interpretation of §921(a)(33)(A)(ii) in favor of a much broader one that treats any offensive touching, no matter how slight, as sufficient. That expansive common-law definition cannot be squared with relevant precedent or statutory text.

We have twice addressed the meaning of "physical force" in the context of provisions that define a class of violent crimes. Both times, we concluded that "physical force" means violent force. In *Johnson*, we thought it "clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force." *Id.*, at 140. And we held that common-law offensive touching— the same type of force the Court today holds *does* constitute "physical force"—is *not* sufficiently violent to satisfy

_____

[1] Respondent argues at length that Tenn. Code Ann. §39–13–111(b) (2013 Supp.) does not require the "use" of physical force, since it is possible to cause bodily injury through deceit or other nonviolent means. Brief for Respondent 30–42. The argument fails for the reasons given by the Court. See *ante,* at 13.

the Armed Career Criminal Act's "physical force" require-
ment. See *id.*, at 140–144. Our analysis in *Johnson* was
premised in large part on our earlier interpretation of the
generic federal "crime of violence" statute, 18 U. S. C. §16.
In *Leocal* v. *Ashcroft*, 543 U. S. 1, 11 (2004), we observed
that §16(a)—which defines a "crime of violence" as "an
offense that has as an element the use, attempted use,
or threatened use of physical force against the person or
property of another"—comprehends "a category of vio-
lent, active crimes." The textual similarity between
§921(a)(33)(A)(ii)'s "physical force" clause and the clauses
at issue in *Johnson* and *Leocal* thus raises the question:
Why should the same meaning not apply here?

   The Court gives four responses that merit discussion,
none of which withstands scrutiny. First, the Court in-
vokes the "'settled principle of interpretation that, absent
other indication, "Congress intends to incorporate the
well-settled meaning of the common-law terms it uses."'"
*Ante*, at 4 (quoting *Sekhar* v. *United States*, 570 U. S. ___,
___ (2013) (slip op., at 3)). That principle is of limited
relevance, since the presumption of consistent statutory
meaning is precisely "other indication" that §921(a)(33)
(A)(ii) does not incorporate the common-law meaning.
Anyway, a more accurate formulation of the principle
cited by the Court is that when "'a word is obviously
transplanted from another legal source, whether the
common law *or other legislation*, it brings the old soil with
it.'" *Sekhar*, *supra*, at ___ (slip op., at 3–4) (quoting
Frankfurter, Some Reflections on the Reading of Statutes,
47 Colum. L. Rev. 527, 537 (1947); emphasis added).
Section 921(a)(33)(A)(ii) was enacted after the statutes
involved in *Johnson* and *Leocal*,[2] and its "physical force"

------

[2] Section §921(a)(33)(A)(ii) was enacted in 1996. See §658, 110 Stat.
3009–371. The Armed Career Criminal Act provision interpreted in
*Johnson* was enacted in 1986, see §1402, 100 Stat. 3207–39, and the

clause is quite obviously modeled on theirs.

Second, the Court asserts that any interpretation of "physical force" that excludes offensive touching "would have rendered §922(g)(9) inoperative in many States at the time of its enactment." *Ante*, at 9. But there is no interpretive principle to the effect that statutes must be given their broadest possible application, and §922(g)(9) without offensive touching would have had application in four-fifths of the States. Although domestic violence was "routinely prosecuted" under misdemeanor assault or battery statutes when Congress enacted §922(g)(9), *United States* v. *Hayes*, 555 U. S. 415, 427 (2009), and such statutes generally prohibited "both offensive touching and the causation of bodily injury" or "only the latter," *ante*, at 9, it does not follow that interpreting "physical force" to mean violent force would have rendered §922(g)(9) a practical nullity. To the contrary, §922(g)(9) would have worked perfectly well in 38 of the 48 States that had misdemeanor assault or battery statutes at the time of §922(g)(9)'s enactment. At that point, 19 States had statutes that covered infliction of bodily injury but not offensive touching,[3] and 19 more had statutes that prohibited both of types of conduct, but did so in a divisible manner—thus

_____

"crime of violence" statute discussed in *Leocal* was enacted in 1984, see §1001, 98 Stat. 2136.

[3] See Ala. Code §13A–6–22 (1995); Alaska Stat. §11.41.230 (1996); Ark. Code Ann. §5–13–203 (1993); Colo. Rev. Stat. Ann. §18–3–204 (Westlaw 1996); Conn. Gen. Stat. §53a–61 (1996); Haw. Rev. Stat. Ann. §707–712 (1994); Ky. Rev. Stat. Ann. §508.030 (Michie 1990); Minn. Stat. §609.224 (Westlaw 1995); Miss. Code Ann. §97–3–7 (Westlaw 1995); Neb. Rev. Stat. §28–310 (1995); N. J. Stat. Ann. §2C:12–1 (West 1995); N. Y. Penal Law Ann. §120.00 (Westlaw 1995); N. D. Cent. Code Ann. §12.1–17–01 (Westlaw 1995); Ohio Rev. Code Ann. §2903.13 (Lexis 1993); Ore. Rev. Stat. §163.160 (1991); 18 Pa. Cons. Stat. Ann. §2701 (Westlaw 1995); S. D. Codified Laws §22–18–1 (1988); Vt. Stat. Ann., Tit. 13, §1023 (1995); Wis. Stat. Ann. §940.19 (West Cum. Supp. 1995).

making it possible to identify the basis for a conviction by inspecting charging documents and similar materials, see *Descamps* v. *United States*, 570 U. S. ___, ___ (2013) (slip op., at 5–8).[4]  That leaves only 10 States whose misdemeanor assault or battery statutes (1) prohibited offensive touching, and (2) were framed in such a way that offensive touching was indivisible from physical violence.[5]  The fact that §922(g)(9) would not have applied immediately in 10 States is hardly enough to trigger the presumption against ineffectiveness—the idea that Congress presumably does not enact useless laws.  Compare *Hayes*, *supra*, at 427 (rejecting an interpretation that supposedly would have rendered §922(g)(9) "'a dead letter' in some two-thirds of the States").  I think it far more plausible that Congress enacted a statute that covered domestic-violence convictions in four-fifths of the States, and left it to the handful of nonconforming States to change their laws (as some have), than that Congress adopted a meaning of "domestic violence" that included the slightest unwanted touching.

––––––––––

[4]See Ariz. Rev. Stat. Ann. §13–1203 (Westlaw 1995); Del. Code Ann., Tit. 11, §§601, 611 (1995); Fla. Stat. §784.03 (Westlaw 1995); Ga. Code Ann. §16–5–23 (1996); Idaho Code §18–903 (Westlaw 1996); Ill. Comp. Stat., ch. 720, §5/12–3 (West 1994); Ind. Code §35–42–2–1 (Michie 1994); Iowa Code §708.1 (Westlaw 1996); Kan. Stat. Ann. §21–3142 (1995); Me. Rev. Stat. Ann., Tit. 17–A, §207 (Westlaw 1996); Mo. Rev. Stat. §565.070 (Westlaw 1996); Mont. Code Ann. §45–5–201 (1995); N. H. Rev. Stat. Ann. §631:2–a (West 1996); N. M. Stat. Ann. §§30–3–4, 30–3–5 (Westlaw 1996); Tenn. Code Ann. §39–13–101 (1991); Tex. Penal Code Ann. §22.01 (Westlaw 1996); Utah Code Ann. §76–5–102 (Lexis 1995); W. Va. Code Ann. §61–2–9 (Lexis 1992); Wyo. Stat. Ann. §6–2–501 (1996).

[5]See Cal. Penal Code Ann. §242 (Westlaw 1996); La. Rev. Stat. Ann. §14:33 (Westlaw 1996); Mass. Gen. Laws, ch. 265, §13A (West 1994); Mich. Comp. Laws §750.81 (1991); Nev. Rev. Stat. Ann. §200.481 (West Cum. Supp. 1995); N. C. Gen. Stat. Ann. §14–33 (Lexis 1993); Okla. Stat., Tit. 21, §642 (West 1991); R. I. Gen. Laws §11–5–3 (Michie 1994); Va. Code Ann. §18.2–57 (Michie 1996); Wash. Rev. Code Ann. §9A.36.041 (Michie 1994).

Third, the Court seizes on the one and only meaningful distinction between §921(a)(33)(A)(ii) and the other provisions referred to above: that it defines a violent "misdemeanor" rather than a "violent felony" or an undifferentiated "crime of violence." *Ante*, at 5–6. We properly take account of the term being defined when interpreting "an unclear definitional phrase." *United States* v. *Stevens*, 559 U. S. 460, 474 (2010); but see *Babbitt* v. *Sweet Home Chapter, Communities for Great Ore.*, 515 U. S. 687, 717–719 (1995) (SCALIA, J., dissenting). But when we do so, we consider *the entire* term being defined, not just part of it. Here, the term being defined is "*misdemeanor* crime of domestic *violence*." Applying the term-to-be-defined canon thus yields the unremarkable conclusion that "physical force" in §921(a)(33)(A)(ii) refers to the type of force involved in violent misdemeanors (such as bodily-injury offenses) rather than nonviolent ones (such as offensive touching).

Fourth, and finally, the Court seeks to evade *Johnson* and *Leocal* on the ground that "'domestic violence' encompasses a range of force broader than that which constitutes 'violence' *simpliciter*." *Ante*, at 6, n. 4. That is to say, an act need not be violent to qualify as "domestic violence." That absurdity is not only at war with the English language, it is flatly inconsistent with definitions of "domestic violence" from the period surrounding §921(a)(33)(A)(ii)'s enactment. At the time, dictionaries defined "domestic violence" as, for instance, "[v]iolence between members of a household, usu. spouses; an assault or other violent act committed by one member of a household against another," Black's Law Dictionary 1564 (7th ed. 1999), and "[v]iolence toward or physical abuse of one's spouse or domestic partner," American Heritage Dictionary 534 (4th ed. 2000).[6] Those definitions, combined with

———————

[6] Definitions of "physical force" from the same period are also at odds

the absence of "domestic violence" entries in earlier dictionaries, see, *e.g.,* Black's Law Dictionary 484 (6th ed. 1990); American Heritage Dictionary 550 (3d ed. 1992), make it utterly implausible that Congress adopted a "term of art" definition "encompassing acts that one might not characterize as 'violent' in a nondomestic context," *ante*, at 7.

The Court's inventive, nonviolent definition fares no better when judged against other accepted sources of meaning. Current dictionaries give "domestic violence" the same meaning as above: ordinary violence that occurs in a domestic context. See, *e.g.,* American Heritage Dictionary 533 (5th ed. 2011) ("[p]hysical abuse of a household member, especially one's spouse or domestic partner"). The same goes for definitions of "domestic violence" found in other federal statutes.[7] Indeed, Congress defined "crime of domestic violence" as a "crime of violence" in another section of the same bill that enacted §921(a)(33)(A)(ii). See §350(a), 110 Stat. 3009–639, codified at 8 U. S. C. §1227(a)(2)(E)(i).

The Court ignores these authorities and instead bases its definition on an *amicus* brief filed by the National Network to End Domestic Violence and other private

―――――――――

with the Court's nonviolent interpretation of that phrase. See Black's Law Dictionary 656 (7th ed. 1999) ("[f]orce consisting in a physical act, esp. a violent act directed against a robbery victim"); *id.*, at 1147 (6th ed. 1990) ("[f]orce applied to the body; actual violence").

[7] See, *e.g.,* 18 U. S. C. §2261(a)(1) (defining as "[i]nterstate domestic violence" certain "crime[s] of violence"); §3561(b) ("The term 'domestic violence crime' means a crime of violence . . . in which the victim or intended victim is the [defendant's] spouse" or other qualifying relation); 25 U. S. C. A. §1304(a)(2) ("The term 'domestic violence' means violence committed by a current or former spouse or" other qualifying relation); 42 U. S. C. A. §13925(a)(8) (Sept. 2013 Supp.) ("The term 'domestic violence' includes felony or misdemeanor crimes of violence committed by a current or former spouse" or other qualifying relation).

organizations,[8] and two publications issued by the Department of Justice's Office on Violence Against Women. The *amicus* brief provides a series of definitions—drawn from law-review articles, foreign-government bureaus, and similar sources—that include such a wide range of nonviolent and even *nonphysical* conduct that they cannot possibly be relevant to the meaning of a statute requiring "physical force," or to the legal meaning of "domestic violence" (as opposed to the meaning desired by private and governmental advocacy groups). For example, *amici*'s definitions describe as "domestic violence" acts that "humiliate, isolate, frighten, . . . [and] blame . . . someone"; "acts of omission"; "excessive monitoring of a woman's behavior, repeated accusations of infidelity, and controlling with whom she has contact." Brief for National Network to End Domestic Violence et al. as *Amici Curiae* 5–8, and nn. 7, 11. The offerings of the Department of Justice's Office on Violence Against Women are equally capacious and (to put it mildly) unconventional. Its publications define "domestic violence" as "a pattern of abusive behavior . . . used by one partner to gain or maintain power and control over another," including "[u]ndermining an individual's sense of self-worth," "name-calling," and "damaging one's relationship with his or her children." See, *e.g.,* Domestic Violence, online at http://www.ovw.usdoj.gov/domviolence.htm (all Internet materials as visited Mar. 21, 2014, and available in the Clerk of Court's case file).[9]

——————

[8]The other organizations on the brief are the National Domestic Violence Hotline, the Domestic Violence Legal Empowerment and Appeals Project, Legal Momentum, and innumerable state organizations against domestic violence.

[9]The Court refers in a footnote to two additional social-science definitions, neither of which aids the Court's cause. See *ante,* at 7, n. 5. The first is drawn from a health-care manual that provides "a behavioral definition of domestic violence . . . *rather than a legal definition*, since a

Of course these private organizations and the Department of Justice's (nonprosecuting) Office are entitled to define "domestic violence" any way they want for their own purposes—purposes that can include (quite literally) giving all domestic behavior harmful to women a bad name. (What is more abhorrent than *violence* against women?) But when they (and the Court) impose their all-embracing definition on the rest of us, they not only distort the law, they impoverish the language. When everything is domestic violence, nothing is. Congress will have to come up with a new word (I cannot imagine what it would be) to denote actual domestic *violence*.

Although the Justice Department's definitions ought to be deemed unreliable *in toto* on the basis of their extravagant extensions alone (*falsus in uno, falsus in omnibus*), the Court chooses to focus only upon the physical actions that they include, viz., "[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling." *Ibid.* None of those actions bears any real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury. Cf. *Johnson*, 559 U. S., at 143 (identifying "a slap in the face" as conduct that might rise to the level of violent force). And in any event, the Department of Justice thankfully receives no deference in our interpreta-

———————

behavioral definition is more comprehensive and more relevant to the health care setting." A. Ganley, Understanding Domestic Violence, in Improving the Health Care Response to Domestic Violence: A Resource Manual for Health Care Providers 18 (2d ed. 1996) (emphasis added), online at http://www.futureswithoutviolence.org/userfiles/file/HealthCare/improving_healthcare_manual_1.pdf. Here, of course, we are concerned with the *less* comprehensive legal definition. The second definition referred to in the footnote equates domestic violence with "overt violence," which in its least serious form consists of "*painful* pinching or squeezing." M. McCue, Domestic Violence: A Reference Handbook 6 (1995) (emphasis added). That meaning is consistent with *Johnson*'s definition of "physical force," but it plainly does not include harmless offensive touching.

tion of the criminal laws whose claimed violation the Department of Justice prosecutes. See *Gonzales* v. *Oregon*, 546 U. S. 243, 264 (2006) (citing *Crandon* v. *United States*, 494 U. S. 152, 177 (1990) (SCALIA, J., concurring in judgment)). The same ought to be said of advocacy organizations, such as *amici*, that (unlike dictionary publishers) have a vested interest in expanding the definition of "domestic violence" in order to broaden the base of individuals eligible for support services.[10]

*      *      *

This is a straightforward statutory-interpretation case that the parties and the Court have needlessly complicated. Precedent, text, and common sense all dictate that the term "physical force," when used to define a "misdemeanor crime of domestic violence," requires force capable of causing physical pain or bodily injury.

––––––––––

[10] See, *e.g.,* National Network to End Domestic Violence, Reauthorize The Family Violence Prevention and Services Act 1 (Sept. 22, 2010) (advocating the expansion of a program assisting victims of domestic violence to include victims of "dating violence" and thereby "ensure that all victims in danger can access services"), online at http://nnedv.org/downloads/Policy/FVPSA_fact_sheet_9-22-10.pdf.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–1371

_____

## UNITED STATES, PETITIONER *v.* JAMES ALVIN CASTLEMAN

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[March 26, 2014]

JUSTICE ALITO, with whom JUSTICE THOMAS joins, concurring in the judgment.

The decision in this case turns on the meaning of the phrase "has, as an element, the use . . . of physical force." 18 U. S. C. §921(a)(33)(A)(ii). In *Johnson* v. *United States*, 559 U. S. 133 (2010), the Court interpreted the very same language and held that "physical force" means "violent force." *Id.*, at 140. I disagreed and concluded that the phrase incorporated the well-established meaning of "force" under the common law of battery, which did not require violent force. See *id.*, at 146 (dissenting opinion).

The Court of Appeals in the present case understandably followed the reasoning of *Johnson*, but now this Court holds that *Johnson* actually dictates that the identical statutory language be interpreted in exactly the same way that the *Johnson* majority rejected. See *ante*, at 5.

In my view, the meaning of the contested statutory language is the same now as it was four years ago in *Johnson*, and therefore, for the reasons set out in my *Johnson* dissent, I would not extend the reasoning of *Johnson* to the question presented here, on which the *Johnson* Court specifically reserved judgment. 559 U. S., at 143–144.